**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 13-98-GFVT-CJS**

**BRAD DENNEY**                                                                          **PETITIONER**

**v.**                                      <u>**REPORT AND RECOMMENDATION**</u>

**CLARK TAYLOR, Warden**
**Kentucky State Reformatory**                                                **RESPONDENT**

\* \* \* \* \* \* \* \* \* \*

Petitioner Brad Denney, an inmate currently incarcerated at Kentucky State Reformatory,

LaGrange, Kentucky, has filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254

(*See* R. 1).  Respondent filed an Answer (R.12), to which Petitioner filed a Reply.  (R. 19).  Having

all relevant documents before the Court, the matter is now ripe for consideration and preparation of

a Report and Recommendation pursuant to 28 U.S.C. § 636(b).  For the reasons set forth below, it

will be **recommended** that Petitioner's § 2254 Petition be **denied.**

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On September 24, 2001, the McCreary County, Kentucky grand jury indicted Petitioner Brad

Denney on the capital offense of murder ("Count 1") and the offense of first degree robbery ("Count

2") for the alleged July 28, 2001, robbery and murder of Bill Bishop.  (R. 12-4, at 86).  On

November 28, 2001, the Commonwealth filed notice of its intent to seek the death penalty against

Petitioner, citing the aggravating circumstance that Petitioner committed murder while he was

engaged in the commission of robbery in the first degree.  (*Id.* at 88).  Petitioner pled not guilty to

these charges.

Jury selection for Petitioner's trial began on February 25, 2003. (R. 12-4, at 96). On February 26, 2003, Petitioner filed a motion to withdraw his plea of not guilty, and pursuant to a plea agreement with the Commonwealth, enter a plea of guilty to Count 1 in exchange for dismissal of Count 2 and a recommended life sentence. (*Id.* at 90-93). After the prospective jurors were dismissed, Petitioner was placed under oath by the trial court. (*Id.* at 96). Petitioner affirmed that he was not under the influence of any drugs or alcohol. (*Id.*). Petitioner acknowledged that he had been afforded sufficient time to consult with his attorney, and verified that he had not been threatened, forced, or coerced to change his plea, and that he had not been promised anything other than what was in the plea agreement. (*Id.*). The court then proceeded to ask Petitioner if he understood that by pleading guilty, he would waive certain rights including his right to a trial by jury, his right to an appeal, his right to confront and cross-examine witnesses, and his right to present evidence and witnesses on his behalf. (*Id.* at 99). Petitioner stated he understood. (*Id.*). Petitioner then formally entered his plea of guilty to Count 1 of the indictment. (*Id.* at 99). On April 23, 2003, the trial court entered judgment, finding Petitioner guilty of murder and sentencing him to a term of life imprisonment. (*Id.* at 101). Petitioner did not file a direct appeal.

On February 12, 2004, Petitioner sought post-conviction relief by filing a motion for collateral relief pursuant to Kentucky Rule of Criminal Procedure ("RCr") 11.42. (R. 12-5, at 104-45). The state trial court denied Petitioner's motion without an evidentiary hearing. (*Id.* at 146-47). Petitioner appealed, and on April 29, 2005, the Kentucky Court of Appeals affirmed the trial court's decision on all but one claim: whether counsel was ineffective for failing to convey a supposed plea offer. *Denney v. Commonwealth*, 2005 WL 991195, at *1 (Ky. Ct. App. Apr. 29, 2005). The court reversed and remanded for the trial court to hold an evidentiary hearing on this claim. *Id.* On

2

remand, after conducting an evidentiary hearing, the trial court again denied Petitioner's 11.42 motion. (R. 12-8, at 250-51). On appeal, the Kentucky Court of Appeals affirmed. *Denney v. Commonwealth*, 2008 WL 2941140, at *2 (Ky. Ct. App. Aug. 1, 2008). The Kentucky Supreme Court denied discretionary review on May 13, 2009, at which time the Court of Appeals' decision became final. (*Id.*).

Meanwhile, on April 14, 2009, Petitioner filed a Kentucky Rule of Civil Procedure ("CR") 60.02 Motion, which the trial court orally denied on May 12, 2009, without a written order. *See Denny v. Commonwealth*, 2012 WL 2604599, at *1 (Ky. Ct. App. July 6, 2012).[1] Petitioner filed a second CR 60.02 motion on October 25, 2010, which the trial court denied by written order on June 23, 2011. (*Id.*). On appeal, the Kentucky Court of Appeals affirmed,[2] and the Kentucky Supreme Court denied discretionary review on April 17, 2013. (*Id.*).

Denney filed the present Petition seeking relief from his state court convictions under § 2254. (R. 1). Denney raises four grounds for relief:

> GROUND ONE: There is no evidence of guilt because Petitioner did not commit the crime.
> Supporting Facts: Alleged co-defendant made deal with Commonwealth to give perjured testimony against Petitioner. Counsel informed Petitioner he would get the death penalty on co-defendant's testimony. Victim's neices [sic] were alibi witnesses for

---

[1] The Court of Appeals' decision spelled Petitioner's last name as "Denny" rather than "Denney," noting that Petitioner used that spelling in his notice of appeal. Because the pending § 2254 Petition was filed by "Brad Denney," this spelling will be used in this Report and Recommendation.

[2] On appeal, the Commonwealth argued that at least one claim in Denney's second CR 60.02 motion had already been decided by the trial court in May 2009, when it orally denied Denney's first CR 60.02 motion. The Court of Appeals rejected this argument, noting that "because no written order was entered denying the motion, the alleged oral denial of [Denney's] CR 60.02 motion in May 2009 is a nullity." *Denny v. Commonwealth*, 2012 WL 2604599, at *1.

Petitioner but counsel never interviewed them. See alibi affidavits by victim's nieces.

GROUND TWO: Alibi witnesses, being victim's neices [sic] were never interviewed.
Supporting Facts: Petitioner had 3 alibi witnesses available for trial, RCr 11.42 motion and CR 60.02 motions. Trial counsel nor appellate counsel interviewed or subpoenaed these credible alibi witnesses who were/are neices [sic] of the victim. No Court will address their affidavits of Petitioner's innocence.

GROUND THREE: Extreme Emotional Disturbance was available instead of coerced guilty plea.
Supporting facts: Where there is conflicting evidence as to the sanity at the time of the alleged murder, the question of his sanity at the time of murder must be submitted to the jury. Upon RCr 11.42 being reversed and remanded, post conviction counsel failed to argue or supplement pro se motion by legal aid on behalf of Petitioner.

GROUND FOUR: Prosecutor made plea offer that was never communicated by trial counsel to Petitioner.
Supporting facts: RCr 11.42 was denied without a hearing. On appeal, the Kentucky Court of Appeals reversed and remanded back to circuit court for evidentiary hearing. Post-conviction counsel did NOT argue or supplement any arguments presented pro se by prisoner legal aid on behalf of Petitioner. CR 60.02 was only motion to try to correct RCr 11.42. No other avenues available known to Petitioner.

(R. 1).

For the reasons set forth below, it will be recommended that Denney's § 2254 Petition be denied.

## II.     ANALYSIS

Review of a petition for habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. The AEDPA sets forth the substantive standards for granting habeas relief by providing:

4

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "This is a 'difficult to meet,' *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011) (*quoting Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).  Petitioner carries the burden of proof.  *Id.*

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (*quoting Williams*, 529 U.S. at 405-06).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principal from [the Supreme] Court's decision but unreasonably applies that principal to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at

5

694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  Under the AEDPA, the question for this Court to answer "is not whether a federal court believes the state court's determination was incorrect but whether the determination was unreasonable–a substantially higher threshold." *Schriro v. Langrigan*, 550 U.S. 465, 473 (2007).

An examination of each of the four grounds asserted by Petitioner in his Petition reveals that he is not entitled to relief under the AEDPA.

### A.      Petitioner's procedurally defaulted claims.

Before this Court can consider an issue raised in a § 2254 petition, a state prisoner filing a petition must first exhaust all available state remedies.   *See* 28 U.S.C. § 2254(b)(1); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  To be deemed properly exhausted, each claim must have been fairly presented to the state courts.  *See* 28 U.S.C. § 2254(b), (c); *O'Sullivan*, 526 U.S. at 845 ("state prisoners must give the state courts full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009); *Hafley*, 902 F.2d at 483.  "Fair representation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim." *Wagner*, 581 F.3d at 414-15. "Such a requirement affords state courts an opportunity to consider and correct any violation of federal law, thus expressing respect for our dual judicial system while also furnishing a complete

6

record of a petitioner's federal claim as litigated in the state system, including the state court of last resort." *Hafley*, 902 F.2d at 482.

The exhaustion requirement only bars federal habeas review if state remedies are still available at the time the petitioner files his habeas petition. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (*citing Engle v. Isaac*, 456 U.S. 107, 215 n.28 (1982)). Where no state remedies are available, exhaustion does not pose a barrier to federal review. *See Gray v. Netherland*, 512 U.S. 152, 161-62 (1996) (*citing Castille v. Peppers*, 489 U.S. 346, 351 (1989)). However, these claims may be procedurally defaulted.

A petitioner can procedurally default a claim–and thus be precluded from habeas relief–in one of two ways. First, "[w]here state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review." *Williams*, 460 F.3d at 806. Second, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* If a petitioner has procedurally defaulted a claim in this manner, a federal court can only grant habeas relief if the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law," or if he can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In the present case, Petitioner has procedurally defaulted his first two claims for relief.

### 1.    Ground one.

Denney's first claim, in which he argues that there is no evidence of guilt because he did not commit the crime, was not fairly presented to the state court for review. Exhaustion requires that the petitioner present the "same claim under the same theory." *Pilette v. Foltz*, 824 F.2d 494, 497

(6th Cir. 1987).  Here, Denney did not fairly present in the state court the claim he now asserts in his pending § 2254 Petition. In his RCr 11.42 motion filed in the McCreary Circuit Court, Denney raised three arguments: (1) the trial judge erred by not recusing himself prior to trial; (2) his defense counsel was ineffective; and (3) he did not knowingly and voluntarily plead guilty because his trial counsel failed to communicate the terms of a plea offer made to him from the Commonwealth.  (R. 12-5).

Additionally, review of the appellate decision on Petitioner's 60.02 motion shows no mention of Denney's present claim that "there is no evidence of guilt."  In his 60.02 motion, Denney asserted that his murder conviction should have been a manslaughter conviction due to his extreme emotional disturbance.  *See Denny*, 2012 WL 2604599, at *1.  Denney also alleged that he received ineffective assistance of counsel when his counsel: (1) failed to advise him of a viable defense of extreme emotional disturbance; (2) advised him to enter a guilty plea after failing to ensure that Denney's witnesses would appear in court; and (3) failed to advise him of the defense of voluntary intoxication.  *Id.*  Denney did not raise the same claim he now sets forth in his present motion. Accordingly, because Denney did not fairly present the issue raised in his habeas petition to the state courts, he has not exhausted his state remedies.

The exhaustion requirement only bars federal habeas review if state remedies are still available at the time the petitioner files his habeas petition.  *See Williams*, 460 F.3d at 806 (*citing Engle*, 456 U.S. at 215 n.28).  When a petitioner has not exhausted his state remedies, the federal court must determine whether the petition should be dismissed in order to allow for the petitioner to present his claims to the state court.  If petitioner failed to present his claims to the state court and would now be procedurally barred from doing so, there is a procedural default for purposes of his

federal habeas claim.  *Coleman*, 501 U.S. at 735 n.1; *Bechtol v. Prelesnik*, 568 F. App'x 441, 446 (6th Cir. 2014) (claim procedurally barred where petitioner failed to exhaust state court remedies by fairly presenting issue to state appellate court and alternative state remedies are no longer available).

Here, Denney could have reasonably presented the same claim he now asserts in his habeas petition in his initial RCr 11.42 motion, but he failed to do so.  Kentucky law provides that a defendant may seek relief through filing a post-conviction motion pursuant to either Kentucky Rule of Criminal Procedure 11.42 or Kentucky Civil Rule 60.02.  Under Kentucky law, a defendant may file a post-conviction motion for relief under RCr 11.42 within three years of final judgment, with certain exceptions not at issue here.  *See* RCr 11.42(1).  All possible grounds for relief must be presented in this post-conviction motion, and the defendant will be barred from later raising any issue "that could reasonably have been presented."  RCr 11.42(3); *see also Stoker v. Commonwealth*, 289 S.W.3d 592, 597 (Ky. App. 2009).  Further, post-conviction relief under CR 60.02, while not subject to the same three-year limitations period, is available only in limited circumstances.  Kentucky courts have consistently held that CR 60.02 relief is not intended as merely an additional opportunity to raise claims that could and should have been raised in prior proceedings, but rather "is for relief that is not available by direct appeal and not available under RCr 11.42."  *Gross v. Commonwealth*, 348 S.W.2d 853, 856 (Ky. 1983).

Because Kentucky law precludes successive RCr 11.42 motions raising issues that should have been raised on direct appeal or in an initial RCr 11.42 motion, Denney is now barred by Kentucky law from raising these issues in a later motion.  *See Harris v. Commonwealth*, No. 2010-CA-00826-MR, 2011 WL 1706711, at *2 (Ky. Ct. App. May 6, 2011).  Even if Denney set forth a factual basis for why his habeas claim could not be raised in his initial RCr 11.42 motion, the three-

year time period permitted under Kentucky law for filing an RCr 11.42 motion has long expired. Moreover, because Denney's claim could have been brought in his initial RCr 11.42 proceedings, it does not qualify to be brought in a CR 60.02 proceeding.  Because Denney failed to present this claim to the Kentucky courts and his opportunities for doing so have long since passed, the claim is procedurally defaulted.  *See Williams*, 460 F.3d at 806.  Thus, requiring Denney to return to state court is unnecessary because the state court would deny his claim on procedural grounds.

### 2.    Ground two.

Denney's second claim alleges ineffective assistance of counsel for his counsel's failure to interview alibi witnesses.  (R. 1, at 7, 8).  It does appear this issue was presented to the state courts. In Petitioner's second 60.02 Motion, Petitioner alleged his counsel was ineffective for failing to subpoena alibi witnesses to testify at his trial.  (R. 13-3, at 24).  The trial court denied Petitioner's 60.02 Motion and the Kentucky Court of Appeals affirmed.  However, the Court of Appeals declined to address the merits of Petitioner's claims, finding instead that Petitioner's claims were procedurally defaulted.

Even where a claim was fairly presented to the state court for review, the claim may be procedurally barred if the petitioner failed to present the claim in accordance with state procedural rules.  Under the procedural default doctrine, a federal court is generally barred from reviewing a petitioner's federal constitutional claim "if the state judgment rests on a state-law ground that is both independent of the merits of the federal claim and an adequate basis for the state court's decision." *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004) (internal citations and quotation marks omitted).  The Sixth Circuit uses a four-part test to determine whether a petitioner's claim is procedurally defaulted:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that petitioner failed to comply with the rule . . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . . Third, the court must decide whether the state procedural ground is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim . . . . Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). In conducting this inquiry, federal habeas courts look to the "last explained state court judgment" to determine procedural default. *Hanna v. Ishee*, 694 F.3d 596, 607 (6th Cir. 2012) (*quoting Munson*, 384 F.3d at 315).

Review of the record shows that the first three factors for procedural default are met. As to the first prong, Denney failed to comply with Kentucky's orderly process for seeking post-conviction relief when he did not include his present claim of ineffective assistance of counsel for trial counsel's failure to interview alibi witnesses in his 11.42 motion. Denney would have known of this alleged violation at the time he filed his 11.42 motion. CR 60.02 "is for relief that is not available by direct appeal and not available under RCr 11.42." *Gross*, 348 S.W.2d at 856.

The second prong is also met. In its decision affirming the circuit court's denial of Denney's CR 60.02 motion, the Court of Appeals noted that a CR 60.02 motion was an improper means for Denney to assert his ineffective assistance of counsel claims. *Denny*, 2012 WL 2604599, at *3 . The Court reasoned:

> To the extent that Denny appeals the denial of the ineffective assistance of trial counsel claims that he asserted in his CR 60.02 motion, we review the denial of a CR 60.02 motion for an abuse of discretion. The Kentucky Supreme Court has held that "Civil Rule

11

> 60.02 is not intended merely as an additional opportunity to relitigate the same issues which could reasonably have been presented by direct appeal or RCr 11.42 proceedings." *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997) (internal quotation marks omitted). Civil Rule 60.02 "is not a separate avenue of appeal to be pursued in addition to other remedies, but is available only to raise issues which cannot be raised in other proceedings." *Id.* Because Denny's ineffective assistance of trial counsel claims could have been asserted in his RCr 11.42 motion, the law in Kentucky states that his CR 60.02 motion fails. *See id.*

*Id.* The state court thus enforced the procedural rule against Denney.

Under the third prong, the state procedural rule must constitute "an adequate and independent state ground" on which the state court can rely to deny review of a federal constitutional claim. *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 148 (1979); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). "A state procedural rule is an independent ground when it does not rely on federal law." *Wilson v. Mitchell*, 498 F.3d 491, 499 (6th Cir. 2007) (*citing Coleman v. Thompson*, 501 U.S. 722, 7323 (1991)). Here, Denney's failure to raise his ineffective assistance of counsel claim in his RCr 11.42 motion as required by state law is an "adequate and independent" basis for the state court's decision.

### 3.    The cause and prejudice exception does not apply.

Denney's procedural default can be excused only if he can establish cause and prejudice for the failure to present his claims to the state court or if he can show actual innocence. *Nesser v. Wolfe*, 370 F. App'x 665, 669-70 (6th Cir. Mar. 25, 2010); *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule. Demonstrating prejudice requires showing that the trial was infected with constitutional error." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

12

Here, Denney's Petition offers no reasons why the default of his first claim should be excused under the cause and prejudice exception to the exhaustion of state remedies requirement. As to his second claim, to avoid default Petitioner argues he received ineffective assistance of appellate counsel because appellate counsel failed to appeal or supplement Petitioner's 11.42 motion when it was remanded for an evidentiary hearing. The Sixth Circuit has held that "for ineffective assistance of appellate counsel to serve as cause, the petitioner must first have properly presented the claim of ineffective assistance of appellate counsel to the state courts." *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011). Petitioner first raised his claim of ineffective assistance of appellate counsel in his appeal from the trial court's denial of his second CR 60.02 motion. The Kentucky Court of Appeals noted that Denney failed to raise the claim in his CR 60.02 motion and instead improperly raised his ineffective assistance of post-conviction counsel claims for the first time on appeal. There, the court held that Denney could not "feed one can of worms to the trial judge and another to appellate court." *Denny*, 2012 WL 2604599, at *2 (*quoting Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976)). Thus, the Court of Appeals concluded the claim was not reviewable because Petitioner failed to raise it in his CR 60.02 motion. *Id.* Because the state court held that Denney's ineffective assistance of post-conviction claims were procedurally barred, this Court cannot now review the claim. Accordingly, Denney's procedurally defaulted claims cannot be excused under the cause and prejudice exception.

### 4.   The actual innocence exception does not apply.

Denney's procedural default on his first two claims can alternatively be excused if he can show actual innocence. *Nesser v. Wolfe*, 370 F. App'x 665, 669-70 (6th Cir. Mar. 25, 2010); *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). Denney's Petition offers actual innocence

as a reason why the default of his claims should be excused as an exception to the exhaustion of state remedies requirement.

"[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998) (quotation marks and citation omitted). To demonstrate actual innocence to excuse his procedural default, a petitioner must come forward with "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). In determining whether a petitioner is actually innocent, the court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Id.* at 332. The Supreme Court has recognized that it is an extraordinary case that can meet *Schlup's* high threshold for establishing actual innocence: "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1936 (2013) (*quoting Schlup*, 513 U.S. at 316). Ultimately, a petitioner must prove that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Schlup* at 327-29; *House v. Bell*, 547 U.S. 518, 536-37 (2006).

Here, Petitioner argues that the affidavits of the victim's nieces constitute new evidence. (R. 19, at 9). Even assuming that Petitioner could establish that this evidence is "new,"[3] to establish

---

[3] The Sixth Circuit has recognized there is a circuit split on whether "new evidence" required under *Schlup* includes only newly discovered evidence that was not available at trial, or encompasses any evidence not presented at trial. *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012). In *Bradshaw*, the Sixth Circuit noted that its decision in *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005) suggested this Circuit considers "newly presented evidence" sufficient, but declined to resolve the issue whether the "new evidence required under *Schlup* includes only newly discovered evidence that was not available at the time of trial,

actual innocence a petitioner must demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. Petitioner has not met this burden.

Petitioner contends that the affidavits of the victim's nieces are evidence of his innocence. Petitioner did not attach these allegedly exculpatory affidavits to his Petition for § 2254 relief. Upon review of Petitioner's state court appeals, the Court has identified two affidavits which Petitioner attached to his Motion to Supplement his CR 60.02 motion.[4] (R. 13-8, at 485-88). The affidavits are identical, with the exception of the affiants' names, which on both affidavits have been handwritten into a space and then signed by the respective affiant. (*Id.*). The affidavits are both titled "Complaint Against Kentucky Judicial/Justin [sic] System," and state in relevant part:

> I [affiant's handwritten name] was a sexual abuse victim of my uncle, Bill Bishop and so were many other children. And I made Affidavits on behalf of Mr. Brad Denny innocence and made statements of his innocence to his Attorney, Jane Butcher's investigator. But none of this evidence of Brad Denney's innocence has ever been addressed by any/all court herrings or appeals regarding Mr. Denney's innocence, but I have never been allowed to give testimony, why? Why is it that no court in Kentucky wants to address the Facts of Mr. Denny's Innocence?

(*Id.*) (*all errors in originals*).

These affidavits, even if "new," are hardly adequate to show that, had they been presented at trial, no reasonable juror would have convicted Denney. The Court first notes that the affidavits fail to actually state that Petitioner is innocent. The affiants state only that they made "[a]ffidavits

---

or broadly encompasses all evidence that was not presented to the fact-finder during trial, i.e., newly presented evidence." *Bradshaw*, 693 F.3d at 633. The Court assumes without deciding that the affidavits constitute new evidence under *Schlup*.

[4] The Motion to Supplement was titled in full: "Motion to Supplement Movant's CR 60.02 with New Affidavits of the Victim's Nieces in Support of Movant's Innocence." (R. 13-8, at 489).

on behalf of Mr. Brad Denny innocence and made statements of his innocence to his Attorney, Jane Butcher's investigator." (*Id.*) (*errors in original*). Even assuming that the affidavits did, in fact, state that Petitioner was innocent of the murder of Bill Bishop, the affidavits provide no factual basis for the statement. These conclusory statements, alone, do not meet the demanding standards set forth in *Schlup*, which requires "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup*, 513 U.S. at 316.

Moreover, Petitioner's claim that he is actually innocent directly contradicts his own statements to the contrary in his appeals at the state level. In his Rule 11.42 motion, Denney offered, "[w]hile Denney deeply regrets his actions in the death of Bill Bishop, he does object to counsel's failure to put these clearly forseeable [sic] substantial defenses before a jury." (R. 12-5, at 128). In his CR 60.02 Motion, he stated: "Movant does not deny shooting the victim, but he asserts that he truly does not remember shooting him due to the facts of extreme emotional disturbance." (R. 13-3, at 362). Later on, Denney again acknowledged, "Movant does not deny he pulled the trigger." (*Id.* at 379). In light of the foregoing, Denney cannot demonstrate, under *Schlup*, that he is actually innocent of the crime of murder. Accordingly, the record does not demonstrate that this case constitutes one of those rare or extraordinary cases that justifies a merits review of otherwise procedurally defaulted claims. It will therefore be recommended that the claims presented in grounds one and two be dismissed as procedurally defaulted.

### B.     Petitioner's exhausted ineffective assistance of counsel claims.

Denney's remaining two claims alleging ineffective assistance of counsel were fairly presented to the state courts in conformity with state procedural rules, and are therefore properly

exhausted. Thus, the Court reviews these claims on the merits, applying the AEDPA's deferential standard of review.

It is well established that to prevail on an ineffective assistance of counsel claim a petitioner must meet both prongs of the two-part test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Id.* at 687. A reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 694. To demonstrate deficient performance, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* at 688-89, 693-94. "The [petitioner's] burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, 131 S. Ct. at 787 (*citing Strickland*, 366 U.S. at 687). "To show prejudice, a petitioner must demonstrate that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 366 U.S. at 694. A finding of no prejudice provides an adequate ground for rejecting an ineffective assistance of counsel claim, even if a deficient performance is assumed. *Id.* at 687.

Under federal law, this Court has the power to grant Denney's Petition only if the decision of the Kentucky Court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d).  In order for a state court's application of law to be unreasonable, it must be more than merely erroneous or incorrect, it must be objectively unreasonable.  *Wiggins*, 539 U.S. at 520; *Villagarcia v. Warden, Noble Correctional Inst.*, 599 F.3d 529, 533 (6th Cir. 2010) (*quoting Williams*, 529 U.S. at 411)).  "The threshold for 'unreasonableness' is 'substantially higher' than it is for incorrectness...satisfied only when a state-court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Thurmond v. Carlton*, 489 F. App'x 834, 836-37 (6th Cir. 2012) (*quoting Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Richter*, 131 S.Ct. at 786-87).  Thus, "even if this court 'believe[s] that a state court incorrectly applied federal law, [it] must refuse to issue the writ of habeas corpus if [it] finds that the state court's decision was a reasonable one.'" *Villagarcia*, 599 F.3d at 533 (*quoting Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000)).

### 1.   Ground three.

Denney's third claim asserts, "[e]xtreme emotional disturbance was available instead of a coerced guilty plea."  (R. 1, at 8).  In support, Denney argues that "where there is conflicting evidence as to the sanity at the time of the alleged murder, the question of his sanity at the time of the murder must be submitted to the jury."  (*Id.*).

Respondent argues this claim is procedurally defaulted.  (R. 12-1, at 17).  Respondent notes that Denney raised the claim in his 11.42 motion, but argues that the Court of Appeals did not rule on the merits of this claim, instead granting Denney's request for an evidentiary hearing and remanding the case to the trial court.  Because the evidentiary hearing and Denney's subsequent appeal only discussed the issue of counsel's supposed failure to communicate a plea offer, Respondent concludes that Denney abandoned the claim.  When Denney again raised the claim in

18

his CR 60.02 motion, the Court of Appeals denied the claim relying on a state procedural bar, noting it could have been brought in Denney's Rule 11.42 motion. Respondent explains that Denney abandoned the claim when he failed to pursue it upon remand of his Rule 11.42 motion, and he is now procedurally barred from raising it. (R. 12-1, at 18-19). Thus, Respondent concludes that the claim is procedurally defaulted.

Contrary to Respondent's argument, the Court's review of the record reveals that the Court of Appeals did, in fact, rule on the merits of Denney's present claim. The Court of Appeals affirmed on the merits the trial court's denial of all of Denney's 11.42 claims except one, which it remanded for an evidentiary hearing. *Denney*, 2005 WL 991195, at *1. Kentucky Rule of Criminal Procedure 12.05 provides, "when the claim has been presented to the appellate court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim," even if discretionary review was not sought in the Kentucky Supreme Court. Ky. R. Crim. P. 12.05. Therefore, a claim is deemed exhausted if the petitioner has been denied relief by the Kentucky Court of Appeals. *Weinel v. Little Sandy Correctional Complex*, Civ. No. 10-166-JBC-JGW, 2011 WL 4971117, at *1 n.2 (E.D. Ky. March 28, 2011) (*report and recommendation adopted by* 2011 WL 3475087 (E.D. Ky. Aug. 9, 2011)). Here, because the present claim was presented to the Court of Appeals, and the Court of Appeals denied Denney's claim on its merits, his claim is properly exhausted.

However, claims in a § 2254 petition "may only be considered 'fairly presented' if the petitioner asserted both a factual and legal basis for his claims in state court." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). This means that, in order for a claim to be considered exhausted, the petitioner must have posed the

19

"same claim under the same theory" to the state court. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009).  In his Rule 11.42 petition, Denney claimed his counsel was ineffective because she failed to raise the defense of extreme emotional disturbance.  (R. 12-5, at 14).  In the present motion for habeas relief, Denney states: "Extreme emotional disturbance was available instead of coerced guilty plea," but he does not specifically allege that defense counsel was ineffective because she failed to raise this defense.  (R. 1, at 8).  Denney does indicate in his habeas petition that he previously raised this claim in his Rule 11.42 motion, and states that it was denied without a hearing.  (*Id.* at 9).  Furthermore, Respondent interpreted the claim as an ineffective assistance of counsel claim in its Response.  (R. 12-1).  Thus, the Court will broadly construe Denney's third claim as a claim of ineffective assistance of counsel for defense counsel's alleged failure to raise the defense of extreme emotional disturbance.

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Mitchell v. Esparza*, 540 U.S. 12, 15 (2003) (*citing* 28 U.S.C. § 2254(d)(1)).  A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite Supreme Court opinion.  *Id.* (*citing Early v. Packer*, 537 U.S. 3, 8 (2002)).  A state court need not even be aware of Supreme Court precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Id.*

Here, the Court of Appeals did not specifically cite the *Strickland* standard when it held that Denney's claim was without merit.  However, a state court's adjudication on the merits is not deficient merely because the court did not cite Supreme Court opinion.  The decision must be

"contrary to . . .clearly established Federal law." 28 U.S.C. § 2254(d)(1).  Thus, this Court must determine whether the state court's adjudication on the merits was contrary to the standards for ineffective assistance of counsel set forth in *Strickland*.  The Court finds that it was not.

*Strickland* directs courts to review counsel's performance through a "highly deferential lens." 466 U.S. at 689.  The Supreme Court applied the *Strickland* standard in the context of cases involving guilty pleas in *Hill v. Lockhart*, 474 U.S. 52 (1985).  Where a claim of ineffective assistance of counsel arises out of the plea process, the first prong of *Strickland* remains the same: a petitioner must demonstrate that counsel made errors so serious that his or her performance fell outside the wide range of professionally competent assistance.  *Id.* at 58.  The second "prejudice" prong, on the other hand, requires the defendant to show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Here, the Court of Appeals noted the record contains numerous motions made by trial counsel on Denney's behalf, including a request for a mental examination which was granted by the court.  *Denney,* 2005 WL 991195, at *1.  The court also noted the Commonwealth's argument that because Denney entered a guilty plea which stated on its face that his attorney was "fully informed" about the case, any claim that his attorney was not fully informed was waived.  *Id.*  The court rejected Denney's claim that his trial counsel was ineffective for failing to raise an extreme emotional disturbance defense, holding that it was "unsupported by the record, and no reversible error is shown." *Id.*  Although the Court of Appeals' decision on the issue is brief, the Supreme Court has held that "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the

state court's reasoning." *Harrington*, 562 U.S. at 98. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* Denney has not met this burden.

Habeas review "is limited to the record that was before the state court," *Cullen*, 131 S.Ct. at 1398. Thus, this Court is limited to the record before the Court of Appeals when it decided Denney's present claim. In his Rule 11.42 petition, Denney argued that his trial counsel was ineffective because she "failed to conduct an independent examination of the facts, circumstances, pleadings and laws involved; failed to consult with the defendant properly in regard to trial strategy and failed to present a defense." (R. 12-5, at 119). Denney believes that, had his trial counsel reviewed the evidence and consulted with him about trial strategy, "she may have considered presenting a defense of extreme emotional disturbance, which, if successful, would have reduced the charges from murder to manslaughter in the first degree–a Class B felony, with a penalty range of 10-20 years in prison." (*Id.* at 127).

Denney argued in his 11.42 motion that the following summarized testimony from two of the state's witnesses were examples of the "ample evidence" in the record to support a defense of extreme emotional disturbance. (*Id.* at 126). Denney indicates that one of the witnesses, Anthony Crabtree, gave a taped statement which was played for the grand jury by the Commonwealth Attorney. (*Id.* at 122). According to Denney, in the taped statement Crabtree testified that he had been hanging out with Betty and Foster the night of the alleged murder, but left with Foster "to get uh, some stuff to do." [5] (R. 12-5, at 122). Crabtree testified that when he returned, Betty told him

---

[5] Elsewhere in his RCr 11.42 motion, Denney identifies Foster as the half-brother of the victim, Bill Bishop, and Betty as Foster's wife. (R. 12-5, at 121, 123). Denney also identifies Anthony Crabtree as the victim's nephew. (*Id.* at 122).

Denney had been by and left.  Crabtree said Betty told him, "I think he's going to do, go out and do Bill [the victim], well he's going to, yeah."  (*Id.*).  Crabtree explained, "[a]nd this is all over to do with the child molestation thing that was reported over at the courthouse."  (*Id.*).  Crabtree testified that Denney later returned, and told the group, "well he's not going to bother no body no more, he's gone."  (*Id.*).

Denney also cites to a taped statement of Myra King, which he argues "clearly illustrates the real motive for the murder."  (*Id.* at 124).  It is unclear from Denney's 11.42 motion who Myra King is and who obtained her taped testimony; Denney also does not indicate whether the taped testimony was played before the grand jury.  Denney explains that when King was asked if Denney had ever told her anything about the victim, she stated, "He uh, he never, the only thing he ever said was the man deserved to die, he was a child molester."  "[H]e told me that he did it to rid everybody, rid everybody of what all Bill had done."  (*Id.*).

Denney asserts that this taped testimony from Crabtree and King illustrates just some of the evidence of the "triggering event" which precipitated his actions–a necessary element to establish a defense of extreme emotional disturbance. (*Id.* at 132).  This "triggering event," according to Denney, was that "the victim was child molester."  (*Id.*).  Denney believes that had his counsel reviewed this evidence and consulted with him, "she may have considered presenting a defense of extreme emotional disturbance."  (*Id.* at 127).

The Court of Appeals found Denney's argument that his counsel was ineffective because she failed to raise the defense of extreme emotional disturbance was "unsupported by the record."  This determination was not "contrary to" or an "unreasonable application of" federal law.  *Strickland* directs courts to review counsel's performance through a "highly deferential" lens and to "indulge

a strong presumption that trial counsel's conduct . . . might be considered sound trial strategy." 466 U.S. at 689. Here, even if the Court ignores the obvious evidentiary hurdles that Denney's counsel would have had to overcome to even introduce these statements at trial, Denney has not established that his counsel's decision to not pursue a defense of extreme emotional disturbance was not reasonable. To the contrary, evidence of Denney's statements that he purportedly killed the victim because the victim was a child molester could be more incriminating than helpful. Indeed, if Denney had proceeded to trial and his counsel had introduced evidence of these statements to support a defense of extreme emotional disturbance, and the jury rejected the defense and convicted Denney of first-degree murder, Denney very well might have argued that the decision to introduce the testimony constituted ineffective assistance of counsel because it crystallized Denney's likely motive for the jury. Counsel's decision whether to introduce evidence that has potential risks and rewards is at the very core of a trial counsel's tactical discretion–a discretion that courts should only rarely second-guess. *Collier v. Lafler*, 2011 WL 1211465, at *5 (6th Cir. Mar. 30, 2011).

Moreover, Denney failed to establish prejudice–i.e. "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Even Denney, in his 11.42 motion, seems unsure if he was prejudiced by counsel's performance. Denney suggests that *if* his counsel had investigated the record and consulted with him, she *may have* considered raising a defense of extreme emotional disturbance, which, *if successful*, would have reduced the charges from murder to manslaughter. (R. 12-5, at 127) (emphasis added). Denney's argument is too speculative to satisfy *Hill's* requirement of "a *reasonable probability* that . . . he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Thus, the state courts' decision that Denney failed to establish that

24

his counsel was ineffective for failing to raise an extreme emotional disturbance defense is reasonable.

Finally, to the extent that Denney's third claim for relief alleges that his guilty plea was "coerced," this contention is both procedurally defaulted and without merit.  Denney did not present to the state courts his claim that his guilty plea was coerced.  "Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."  *Williams*, 460 F.3d at 806.  The claim is thus procedurally defaulted.

Denney's suggestion that his guilty plea was coerced is also without merit.  In his 11.42 motion, Denney indicates that he discussed the proposed plea agreement with his counsel, including his concerns with the severity of the sentence.  (R. 12-5, at 142).  Moreover, the language of Denney's plea agreement and the transcript from Denney's February 26, 2003, hearing in which he pled guilty expressly contradict Denney's suggestion that his guilty plea was coerced.  The plea agreement, which Denney signed in open court, provides in relevant part:

> I have reviewed a copy of the indictment and told my attorney all the facts known to me concerning my charges.  I believe he/she is fully informed about my case.  We have fully discussed, and I understand, the charges and any possible defenses to them.

(R. 12-4, at 90 ¶ 3).  The guilty plea also states:

> I declare my plea of "GUILTY" is freely, knowingly, intelligently, and voluntarily made; that I have been represented by counsel; that my attorney has fully explained my constitutional rights to me, as well as the charges against me and any defenses to them; and that I understand the nature of this proceeding and all matters contained in this document.

(*Id.* at 91 ¶ 9).  Before the trial judge took Denney's guilty plea, he reviewed with him the contents

of the agreement.  The trial judge specifically asked,

> THE COURT:          Has anyone threatened you or forced you or
>                     coerced you to change your plea?
>
> MR. DENNEY:         No, sir.

(R. 12-4, at 97).

Accordingly, Denney's third claim for relief should be dismissed.

### 2.        Ground four.

Petitioner's fourth and final claim alleges ineffective assistance of counsel for his trial

counsel's alleged failure to inform him of the specifics of an alleged plea offer made to Petitioner

by the prosecutor.  (R. 1, at 10).  This claim was presented to the state trial court in Petitioner's 11.42

motion, which the trial court denied.  (R. 12-8, at 222).  On appeal, the Kentucky Court of Appeals

reversed and remanded for an evidentiary hearing on Petitioner's claim that he was not able to make

an informed decision regarding the alleged plea deal offer.  *Denney*, 2005 WL 991195, at *1.  On

remand, after holding an evidentiary hearing, the trial court again denied Denney's 11.42 motion,

finding that no direct proof was presented that a plea offer more favorable than the one Denney

ultimately accepted was made to defense counsel.  (R. 13-2, at 314).  On appeal, the Kentucky Court

of Appeals affirmed. *Denney*, 2008 WL 2941140, at *1 .

In its decision denying Petitioner's appeal, the Kentucky Court of Appeals explained:

> Contrary to Denney's assertions, upon review of the video tape of the
> evidentiary hearing that was held in the circuit court concerning
> Denney's RCr 11.42 motion, it is apparent that there was no evidence
> presented to prove that the Commonwealth's initial plea offer during
> *voir dire* was for anything less than life imprisonment.   The
> Commonwealth's Attorney testified that he did not offer anything less
> than life imprisonment because the victim's family did not want

26

anything less than that offered.  Denney's trial counsel, Ms. Butcher, testified that she tried several times to get the Commonwealth's Attorney to agree to a sentence less than life imprisonment, but the only plea offer that the Commonwealth made was for life imprisonment, and nothing less.  Furthermore, both Denney and his daughter, Gretchen, testified that they were unaware of the specific terms of the initial plea offer.  Thus, no evidence was presented to show that the Commonwealth ever offered anything other than life imprisonment.

Consequently, Denney is unable to show that his counsel's performance was deficient, or that, even if it was deficient, Denney would not have pleaded guilty, but would have insisted on going to trial.  *See Bronk*, 58 S.W.3d at 486-87.  Therefore, Denney has failed to show that he received the ineffective assistance of trial counsel.

*Denney,* 2008 WL 2941140, at \*\*2-3.

Here, the Kentucky Court of Appeals properly applied the *Strickland* standard, and concluded that Denney was unable to show that his counsel's performance was deficient because "no evidence was presented to show that the Commonwealth ever offered anything other than life imprisonment." *Id.* at \*2.  The Court of Appeals also found that even if Denney had established that his counsel's performance was deficient, he failed to demonstrate prejudice as a result.  The Court correctly noted that a showing of prejudice, in the context of a guilty plea, requires a showing that "but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial." *Id.* (quoting *Bronk*, 58 S.W.3d at 486-87).  The Court noted that because Denney accepted the plea offer, he was sentenced to life imprisonment, and was spared the possibility of the death penalty which he faced had he insisted on going to trial.  "Courts in this Commonwealth have frequently recognized that when a defendant receives a better sentence than the maximum sentence that he could have received if the case had proceeded to trial, such is evidence tending to show that defense counsel provided effective assistance.  *See Phon v.*

27

*Commonwealth*, 51 S.W.3d 456, 460 (Ky. App. 2001)." (*Id.* at *3). Therefore, the state court's determination that Denney failed to satisfy the *Strickland* standard was not contrary to, or an unreasonable application of federal law. Accordingly, Denney's fourth claim should be denied.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Defendant's § 2254 Motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack*, 529 U.S. at 484). Accordingly, it is recommended that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## IV.    CONCLUSION AND RECOMMENDATIONS

For the reasons stated herein, **IT IS RECOMMENDED** that:

(1)    Defendant's Petition for Writ of Habeas Corpus under 18 U.S.C. § 2254 (R. 1) be **DENIED**;

(2)    a Certificate of Appealability be **DENIED** by the District Court in conjunction with the Court's entry of its final order; and,

(3)    this action be **STRICKEN** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing section 2254 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 13th day of April, 2015.



Signed By:

*Candace J. Smith*

**United States Magistrate Judge**